# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 09-cv-1557 (JFB) (ARL)

_____

JOHN SCHERILLO,

Plaintiff,

VERSUS

DUN & BRADSTREET, INC.,

Defendant.

_____

**MEMORANDUM AND ORDER**
February 17, 2010

_____

JOSEPH F. BIANCO, District Judge:

John Scherillo ("Scherillo" or "plaintiff") brought this action for gross negligence and negligent misrepresentation against Dun & Bradstreet, Inc. ("Dun and Bradstreet" or "defendant"). In particular, plaintiff alleges, among other things, that defendant's negligence in providing him with a report regarding Agape World, Inc. ("Agape") caused him to maintain an existing investment and invest additional funds in Agape. Moreover, the complaint alleges that, less than four months after receiving the report regarding Agape from defendant, it was revealed that Agape was operating a "Ponzi" investment scheme and was insolvent.

Dun and Bradstreet has moved, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the District of New Jersey. In connection with the motion, the Court conducted an evidentiary hearing regarding a forum selection clause that defendant contends plaintiff agreed to on the Dun and Bradstreet website before purchasing the report. For the reasons set forth below, the Court grants defendant's transfer motion.

## I. BACKGROUND

### A. The Complaint

The complaint alleges that, in September 2008, plaintiff purchased, through defendant's "Small Business Solutions" ("SBS") website, a financial report ("the report") about a company called "Agape," in which plaintiff was an investor. (Compl. ¶¶ 4, 6-7.) According to the complaint, the report gave positive indications about Agape's financial health, its business practices, and its future prospects. (Compl. ¶¶ 7-9.) Plaintiff contends that, based on the positive report, he decided to maintain his existing investment in

Agape and to invest additional money. (Compl. ¶ 9). Subsequently, it was revealed that Agape had operated as a "Ponzi scheme" and was insolvent. (Compl. ¶ 7.) Plaintiff alleges that, as a result of defendant's gross negligence and negligent misrepresentation in connection with the information provided to him, he was damaged in the sum of $75,000, which reflects his initial investment in Agape of $50,000, as well as his additional investment of $25,000 in September 2008. (Compl. ¶¶ 9, 18, 25.)

## B. Procedural History

Claiming that Dun and Bradstreet was negligent in preparing the report, plaintiff filed this lawsuit in New York State Supreme Court, Nassau County, on March 9, 2009. Defendants removed the case to this Court on April 14, 2009. Defendant has now moved, pursuant to 28 U.S.C. § 1404(a), for an order transferring the case to the U.S. District Court for the District of New Jersey. As will be discussed in greater detail below, the Court determined, after reviewing the parties' papers on the motion to transfer, that a central—though not necessarily dispositive—issue was the applicability of a forum selection clause which defendant claimed plaintiff had agreed to. Plaintiff, however, denied reading or assenting to the forum selection clause. (*See* Pl. Opp. at 4-5.) Therefore, because of the disputed facts regarding the clause, the Court held an evidentiary hearing on February 5, 2010. *See New Moon Shipping v. Man B & W Diesel, A.G.*, 121 F.3d 24, 32 (2d Cir. 1997) ("A disputed fact may be resolved in a manner adverse [to a party opposing a forum selection clause] only after an evidentiary hearing."); *Caputo v. Holland Am. Line, Inc.*, No. 08-CV-4584 (CPS) (SMG), 2009 WL 2258326, at *1

(E.D.N.Y. July 29, 2009) (citing *New Moon* for the proposition that "a court may not resolve a disputed fact against a party opposing a forum selection clause without conducting an evidentiary hearing"). The matter is now fully submitted.

## II. DISCUSSION

### A. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, in determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether "the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of Am.*, 984 F. Supp. 757, 764 (S.D.N.Y.1997)).

### B. Application

#### i. This Action Could Have Been Brought in the District of New Jersey

Thus, as a threshold matter, the Court must determine whether this action could have been brought in the District of New Jersey. Diversity of citizenship forms the basis for federal jurisdiction in this tort case. 28 U.S.C. § 1391(a) states that, in diversity cases, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Additionally, under § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Plaintiff does not dispute defendant's assertion that Dun and Bradstreet's principal place of business is New Jersey. Therefore, Dun and Bradstreet "resides" in New Jersey, and the District of New Jersey is a permissible venue under § 1391(a)(1) and (c). *See, e.g., Am. Motorists Ins. Co. v. Roller Bearing Co. of Am., Inc.*, No. 99 CIV 9133 AGS, 2001 WL 170658, at *6 (S.D.N.Y. Feb. 21, 2001) ("This action could have been brought in the District of Connecticut because it is undisputed that [defendant] has its principal place of business in Fairfield, Connecticut. Accordingly . . . venue would be proper under § 1391(a)(1) and (c) as to all of [plaintiff's] claims."); *Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.*, No. CV 99-2491 (DRH) (MLO), 2000 WL 33155640, at *3 (E.D.N.Y. Sept. 15, 2000) ("In the instant case, venue in the United States District Court for the Southern

District of Indiana is proper under 28 U.S.C. § 1391(a)(1) because the judicial district is one in which defendant, an Indiana corporation with its principal place of business in Indiana, resides, and all defendants (there being only one) reside in the same state, Indiana.").

ii. Discretionary Factors

Because this action could have been brought in the District of New Jersey, the Court must now determine whether the action should be transferred there. In doing so, the Court has "broad discretion" and may consider a number of factors relating to convenience and the interests of justice. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."); *accord In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). Among these factors are

(1) the plaintiff's choice of forum,
(2) the convenience of the witnesses,
(3) the location of relevant documents and relative ease of access to sources of proof,
(4) the convenience of the parties,
(5) the locus of operative facts,
(6) the availability of process to compel the attendance of unwilling witnesses, [and]
(7) the relative means of the parties.

*D.H. Blair & Co.*, 462 F.3d at 106-07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). Some courts have identified additional factors, including (1) "the forum's

familiarity with the governing law," and (2) "trial efficiency and the interests of justice, based on the totality of the circumstances." *Glass v. S&M NuTec*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 167-68 (E.D.N.Y. 2006); *see also Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000).

There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g.*, *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04 Civ. 629 (ARR) (ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. Moreover, the moving party—here the defendant—has the burden "of establishing the need for a change of forum . . . ." *Wildwood Imports v. M/V Zim Shanghai*, No. 04 Civ. 5538 (MBM), 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005) (citing *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) and *Jasol Carpet, Inc. v. Patcraft Comm. Carpet, Inc.*, No. 96-3064, 1997 WL 97831, at *3 (S.D.N.Y. Mar. 6, 1997)).

a. The Effect of a Forum Selection Clause

Defendant argues that the case should be transferred to the District of New Jersey because, *inter alia*, plaintiff agreed to a forum selection clause when he purchased the report at issue from defendant.

The presence of a valid forum selection clause is a "significant," but not dispositive,

factor in the district court's analysis of a motion made under § 1404(a). *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-31 (1988) ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a).”); *Jones v. Willbrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (“[T]he presence of a forum selection clause [is] but one factor in the district court's consideration of fairness and convenience under section 1404(a)." (citing *Stewart Org.*, 487 U.S. at 31)); *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, No. 05 Civ. 6745(RJS), 2008 WL 833230, at *3 (S.D.N.Y. Mar. 26, 2008) ("Forum selection clauses are properly considered as an additional factor in a § 1404 analysis.").

Conversely, when a party argues venue is improper and that the case should be dismissed under Rule 12(b) of the Federal Rules of Civil Procedure—not transferred under § 1404(a)—a valid forum selection clause is controlling. A line of cases that began with *The Bremen v. Zapata Off-Shore Company*, 407 U.S. 1 (1972), governs the analysis in this situation. *See Jones*, 901 F.2d at 19 ("The . . . broad-based balancing [applied in a motion to transfer] is not appropriate where, as here, a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause that purports to preclude litigation from a venue other than a specific state court."); *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 228 (D. Conn. 2003) ("While the *Bremen/Carnival Cruise* line of precedent makes forum selection clauses, if enforceable, dispositive of

4

jurisdictional issues and determinations of improper venue, the Supreme Court has adopted a more flexible approach in the context of a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a)."); *GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.*, 198 F.R.D. 402, 408 (S.D.N.Y. 2001) ("Whether a case should be dismissed, as opposed to transferred, because of a forum selection clause is governed by the *Bremen* line of cases. In ruling on a motion to transfer venue under § 1404(a), the Supreme Court has held that a court should begin with the flexible standards of § 1404(a) rather than beginning with the principles of *Bremen*." (internal citations omitted)).

However, *Bremen* (and its progeny), even if not controlling the Court's resolution of the pending § 1404(a) motion, are nonetheless relevant in determining the validity and effect of the forum selection clause. *See Stewart*, 487 U.S. at 28 (agreeing with the decision below that the standards in *Bremen* "may prove 'instructive'" in the context of a § 1404(a) motion); *Composite Holdings v. Westinghouse Elec. Corp.,* 992 F. Supp. 367, 370 (S.D.N.Y. 1998) (explaining that the Supreme Court in *Stewart* "made clear that the *Bremen* doctrine would inform the application of Section 1404(a)").

Under the *Bremen* analysis, forum selection clauses are "prima facie valid" and should control questions of venue absent a "strong showing" that enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 10, 15. The Supreme Court has also stated that a forum selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to

negotiation. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991). In applying *Bremen* and determining the validity of forum selection clauses in the context of motions to dismiss, the Second Circuit has developed its own analytical framework. Under this framework, a clause is "presumptively enforceable" if the moving party can demonstrate (i) that the clause was reasonably communicated to the party challenging enforcement; (ii) that the clause is mandatory rather than permissive in nature; and (iii) that the claims involved are subject to the clause. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The burden then shifts to the non-moving party who, to overcome the presumption of enforceability, must make the "'strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *Bremen*, 407 U.S. at 15). The Court will apply this framework to the forum selection clause at issue here, keeping in mind that it is a probative, but not dispositive, factor in resolving the ultimate question of whether transfer is appropriate under § 1404(a).

### 1. The Clause Was Reasonably Communicated to Plaintiff

As noted above, the parties disputed whether plaintiff actually consented to the clause, and the Court held an evidentiary hearing to resolve the issue. As set forth below, after conducting the hearing and carefully considering the testimony and documents submitted, the Court finds that the forum selection clause was reasonably communicated to plaintiff.

At the evidentiary hearing, defendant presented credible evidence that plaintiff,

while purchasing the report from defendant's SBS website, agreed to the terms and conditions of his purchase, which included the forum selection clause. Specifically, George McDonald, who managed the team that developed the SBS website, testified for defendant. McDonald stated that, since 2007, the SBS website has included a page that requires users to register before purchasing a Dun and Bradstreet product ("the registration page"). On the registration page, users input information, including their e-mail address and name. The bottom quarter to third of the page contains a scrollable text box with the title "Terms and Conditions." Within this text box is a provision reading as follows:

> This agreement and performance hereunder shall be governed by and construed in accordance with the laws of the State of New Jersey, U.S.A., and any action, suit, or proceeding instituted hereunder shall be maintained in the courts of the State of New Jersey, U.S.A., or the federal courts located in the State of New Jersey, U.S.A., which courts shall have exclusive jurisdiction for such purposes.

Directly below this text box there is more text that reads: "I have read and AGREE to the terms and conditions shown above." Immediately adjacent to this text is a much smaller, empty box ("the terms and conditions check box"). Also at the bottom of the page is another box containing the phrase "Complete Registration" ("the Complete Registration box"). Clicking on this box completes the user's registration. McDonald testified that if a user clicks on the Complete Registration box without checking the terms and conditions check box, the user is unable to complete

registration and is returned to the registration page.

McDonald also presented documentary evidence, recovered from a database maintained by defendant, showing that plaintiff completed the registration page and "checked" the terms and conditions check box when purchasing the report in September 2008. The Court found McDonald's testimony to be credible in its entirety and fully corroborated by the exhibits introduced at the hearing, which overwhelmingly and unequivocally demonstrated that plaintiff checked the box agreeing to the terms and conditions.

Plaintiff did not provide any evidence to challenge defendant's contention that the clause appeared on the SBS registration page when he purchased the report or that he may have "checked" the terms and conditions check box.[1] Instead, plaintiff's primary contention is that he did not actually consent to the clause, and he sought to show that it was possible for him to unknowingly and involuntarily "check" the terms and conditions check box. Sean Chumura, a cyberwarfare and computer forensics expert, testified that it would be possible for plaintiff to move through the various fields on the registration page by using the tab key and that it would also be possible to "check" the terms and conditions check box by hitting the space bar

---

[1] In his papers opposing the motion, plaintiff appeared to argue that the forum selection clause may not have existed on Dun and Bradstreet's website when he purchased the report. However, plaintiff did not press this argument at the hearing, and, in any event, the Court rejects that argument based upon the evidence submitted by defendant at the hearing.

(rather than by using the computer mouse and clicking on the box). Essentially, Chumura testified that it was possible for plaintiff, while "tabbing" through the registration page, to inadvertently hit the space bar and thereby "check" the terms and conditions box. Plaintiff also testified about his purchase. He asserted that, while "tabbing" through the fields on the registration page, the next page, which required him to enter his credit card information, unexpectedly appeared before he had a chance to read the terms and conditions. Thus, plaintiff contended that he has no recollection of checking the box or reading the terms and conditions, and he must have inadvertently hit the space bar as he was tabbing through the application.

After carefully considering all the evidence, the Court finds that plaintiff voluntarily "checked" the terms and conditions check box. In other words, the Court finds plaintiff's testimony that he did not realize he had checked the box accepting the terms and conditions not to be credible. Moreover, even under plaintiff's theory—that, while "tabbing" through the fields on the registration page, he accidentally hit the space bar key and thereby "checked" the terms and conditions box—plaintiff would have seen the check mark appear in the box and then still would have had to hit the "return" key (or clicked the "complete registration" box with the mouse) to complete the registration and advance to the next screen. Plaintiff would have had an opportunity to see that he checked the box inadvertently before he then hit the return key on the "complete registration" box. Thus, to accept plaintiff's theory, the Court would have to find that plaintiff hit two keys accidentally—the space bar and the return key—and that he was then involuntarily and unexpectedly sent to the next screen where he

nonetheless proceeded to enter his credit card information and complete the purchase of the report. This alleged chain of events is simply not credible. The Court finds that plaintiff knowingly and voluntarily "checked" the terms and conditions box and assented to the clause. If plaintiff chose not to read those conditions before assenting to them, such a decision does not undermine the validity of the clause. Thus, the clause was reasonably communicated to the plaintiff. *See, e.g.*, *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557 (CPS), 2009 WL 2029796, at *12 (E.D.N.Y. June 12, 2009) ("[C]ourts in this Circuit have held that a clear and unambiguous forum selection clause is 'reasonably communicated' to a plaintiff where the plaintiff is required to assent to an online user agreement, such as defendant eBay's, which contains the clause."); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) ("[P]rior to using AdWords, every customer must click on a box acknowledging that they agree to the terms and conditions of Defendant's contract. Thus, Plaintiff's very existence as an AdWords customer is evidence that he agreed to the 2003 form contract proffered by Defendant . . . . [I]t appears that the contract Plaintiff signed did indeed contain the forum selection clause appearing in the 2003 contract proffered by Defendant.").

The fact that plaintiff had to "scroll" through a text box to get to the provision containing the forum selection clause does not affect the Court's analysis. Instead, this Court concludes that forum selection clauses are "reasonably communicated" to a webpage user even where a user simply has to scroll down a page to read the clause. *See, e.g.*, *Chudner v. TransUnion Interactive, Inc.*, 626 F. Supp. 2d 1084, 1090 (D. Or. 2009)

("[Plaintiff] argues that the TrueCredit forum selection clause was a surprise to consumers, because it was contained in a small text-box that required the consumer to scroll down repeatedly to read it in full . . . .   Although [plaintiff]   contends that this renders the forum selection clause hidden and, thus, unenforceable, that fact is simply insufficient to render the forum selection clause invalid due to surprise."); *Feldman v. Google*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) ("That the user would have to scroll through the text box of the Agreement to read it in its entirety does not defeat notice because there was sufficient notice of the Agreement itself and clicking 'Yes' constituted assent to all of the terms."); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004);   *cf. Hines v. Overstock.com, Inc.*, - - - F. Supp. 2d - - -, No. 09 CV 991(SJ), 2009 WL 2876667, at *4 (E.D.N.Y. Sept. 8, 2009) (declining to enforce forum selection clause where terms and conditions could be accessed only through a hyperlink at the bottom of the page).   A person who checks the box agreeing to the terms and conditions of a purchase on an internet site without scrolling down to read all of the terms and conditions is in the same position as a person who turns to the last page of a paper contract and signs it without reading the terms – namely, the clause is still valid.[2]   In sum, the Court concludes that the

forum selection clause was reasonably communicated to the plaintiff.

2. The Clause Is Mandatory and the Claims in This Suit Are Subject to the Clause

The second and third factors in the Second Circuit's framework are also met here.   The choice of forum is mandatory in this instance, as specific language regarding venue has been included in the clause, specifying that any lawsuit "shall be maintained in the courts of the State of New Jersey, U.S.A., or the federal courts located in the State of New Jersey, U.S.A., which courts shall have exclusive jurisdiction for such purposes."   *See, e.g.*, *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors*, 22 F.3d 51, 53 (2d Cir. 1994); *see also Salis v. Am. Export Lines*, 331 F. App'x 811, 813-814 (2d Cir. 2009) (summary order) ("Whether a forum selection clause is mandatory depends on its language, and generally courts will not enforce a clause that specifies only jurisdiction in a designated court without any language indicating that the specified jurisdiction is exclusive."); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989); *Cent. Nat'l Gottesman, Inc. v. M.V. "Gertrude*

---

[2]   Plaintiff's counsel suggested at the hearing that computer programs were available to internet companies that would require a purchaser to scroll down through the terms and conditions before they could check the box agreeing to the terms and conditions.   As a threshold matter, although such a program may encourage an internet user to read terms and conditions by requiring an extra computer step, the Court notes that, even if such technology were utilized, a purchaser could still claim to have quickly scrolled down through the

terms and conditions without reading them.   In any event, even if such technology is available, the failure to utilize such technology does not invalidate a forum selection clause and is irrelevant if the clause was otherwise reasonably communicated to the plaintiff.   For a court to impose such a *per se* legal requirement on internet companies in order to enforce a contract would be the equivalent of requiring a party to a paper contract to ensure that the opposing contractual party flipped through all the pages before signing it.   There is no such requirement in the laws of contract whether executed on paper or on the internet.

*Oldendorff*," 204 F.Supp.2d 675, 678 (S.D.N.Y. 2002) ("For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language." (citation omitted)). Additionally, the claims in this suit are subject to the clause because the clause governs "[t]he agreement and performance hereunder" without limitation. *See, e.g.*, *Salis*, 331 F. App'x at 814 (finding clause that, by its terms, applied to "'[a]ny claim or dispute arising under or in connection with'" a bill of lading applied to claims at issue). Nor is the clause's application affected by the fact that plaintiff brings his claims in tort, not contract, because plaintiff's negligence claims ultimately depend on the contract he entered into with defendants. *See Bluefire Wireless, Inc. v. CloudNine Comms.*, No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("[A] forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if the resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract.") internal citations and quotations omitted)); *see also* (Compl. ¶ 13 ("Defendant had a duty of care to the Plaintiff as a result of *the existing contractual relationship between the parties.*") (emphasis added); *id.* ¶ 20.). Thus, because the clause was reasonably communicated to plaintiff, is mandatory, and encompasses the claims at issue, it is presumptively enforceable.

### 3. The Clause Is Not Unreasonable

Although the forum selection clause is valid and enforceable, it will not be enforceable if it is unreasonable. A clause is unreasonable: (1) if its incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing *The Bremen*, 407 U.S. at 10, 15, 18, and *Carnival Cruise Lines, Inc.*, 499 U.S. at 595-96); *S.K.I. Beer Corp. v. Baltika Brewery*, 443 F. Supp. 2d 313, 316 (E.D.N.Y. 2006) (same) (citations omitted). No credible argument can be made that plaintiff will be deprived of his day in court due to the inconvenience of litigating this dispute in New Jersey, nor that New Jersey law is fundamentally unfair or would deprive him of a remedy.[3] Similarly, there is no credible evidence that the clause was the result of fraud or overreaching, or that its enforcement would be against public policy under New York law. To the extent plaintiff suggests some type of procedural unconscionability because he did not read the terms and conditions (including the forum selection clause) before hitting the space bar and thereby checking the box, the Court finds that argument unpersuasive. "Procedural unconscionability involves 'the lack of meaningful choice,' which considers all the circumstances surrounding the contract, including whether each party had a reasonable opportunity to understand the terms of the contract, whether deceptive tactics were employed, the use of fine print, and disparities

---

[3] To the extent plaintiff argues that enforcing the clause would burden him, that issue is discussed below in connection with the other § 1404(a) factors.

9

in education, experience and bargaining power." *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187 (JFB) (CLO), 2006 U.S. Dist. LEXIS 52426, at *19 (E.D.N.Y. Jul. 31, 2006) (citing *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995), and *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)). While plaintiff maintains that he neither read nor assented to any agreement with Dun and Bradstreet, this Court has found that plaintiff did, in fact, knowingly assent to the terms and conditions. As a result, even if plaintiff failed to read the terms of the contract, he is nevertheless bound by the forum-selection clause. "[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Paper Express, Ltd. v. Pfankuch Maschinen GMBH*, 972 F.2d 753, 757 (7th Cir. 1992) (enforcing forum-selection clause where plaintiff had not read the clause prior to signing the contract) (citing 3 Arthur L. Corbin, *Corbin on Contracts* 607 (1989), and 13 Samuel Williston, *Williston on Contracts* 1577 (1988)); *see also Ainsley Skin Care of N.Y., Inc. v. Elizabeth Grady Face First, Inc.*, No. 97-CV-6716 (LAP) (AJP), 1997 U.S. Dist. LEXIS 19102, at *11 (S.D.N.Y. Dec. 2, 1997) ("[A] businessman acting in a commercial context, is held to have understood the consequences of his having signed [contracts], which designate [a particular forum] as the appropriate forum for any action arising thereunder. If [the complaining party] did not read them or hire counsel to do so, he is the victim of his own lack of diligence, not [the opposing party's] misconduct." (quoting *Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1273 (S.D.N.Y. 1995) (internal citation and additional citations omitted))); *Weingrad v. Telepathy, Inc.*, No. 05-CV-2024 (MBM), 2005 U.S. Dist. LEXIS 26952, at *11 (S.D.N.Y. Nov. 7, 2005) (stating that a party was "bound by the terms of the forum selection clause even if he did not take the time to read it because 'a signatory to a [contract] is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed.'" (quoting *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 382 (S.D.N.Y. 2001) (internal citation omitted))). In short, plaintiff has not shown that the clause is in any way unreasonable. Thus, the forum selection clause is valid and enforceable.

### b. Additional Discretionary Factors

As noted above, because the existence of a valid and enforceable forum selection clause is a "significant" but not dispositive factor under a § 1404(a) analysis, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. at 30, the Court must now examine the other discretionary factors. As the Court said in *Stewart*,

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause . . . .

*Stewart*, 407 U.S. at 30-31. As set forth below, an analysis and balancing of the other discretionary factors also supports transfer of this case to the District of New Jersey.

10

(i) The Locus of Operative Facts

The locus of operative facts is an important factor to be considered in deciding whether a motion to transfer should be granted. *See, e.g.*, *G. Angel Ltd. v. Camper & Nicholson USA, Inc.*, No. 06 Civ. 3495 (PKL), 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008). In order to ascertain the locus of operative facts, courts should look to "the site of the events from which the claim arises." *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1992). In the instant case, plaintiff's claims relate to defendant's allegedly negligent preparation of a report. Defendant has stated that documents relevant to the creation of the report are located at defendant's Short Hills, New Jersey office and at other "offices located outside the State of New York." (Sapirman Aff. ¶ 7.) Additionally, the individuals who collected and compiled the data for the report work in Short Hills and at an office in Pennsylvania. (*Id.* ¶ 8.) While plaintiff received the report at his home on Long Island, this fact is not especially relevant to defendant's alleged negligence in preparing the report. Thus, as between Long Island and New Jersey, New Jersey is clearly the "locus of operative facts." *See, e.g.*, *Abreu v. Family Shipping & Serv.*, No. 00-CV-0284 (ILG), 2000 WL 516565, at *2 (E.D.N.Y. May 6, 2000) ("The operative facts occurred in New Jersey, which is where the automobile was loaded onto the ship and the Bill of Lading was issued. All the relevant witnesses reside in New Jersey. It appears that the only connections to New York are that it was the place of initial receipt of the automobile and it is the plaintiff's residence."). Thus, the locus of operative facts strongly favors transfer.

(ii) Convenience of Witnesses

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g.*, *DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)); *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)). Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes "the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 198 (E.D.N.Y. 1998) (quoting *Laumann Mfg. Corp. v. Castings USA Inc.*, 913 F. Supp. 712, 720 (E.D.N.Y. 1996)).

Generally speaking, this factor would favor transfer because the testimony of witnesses who prepared the report—and who work in New Jersey and Pennsylvania—will

most likely be the key testimony in this case. However, the Second Circuit has stated that a party seeking to rely on the convenience of witnesses factor "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); *see also Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) ("A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum." (internal quotations and citations omitted)). Here, defendant has not identified by name or title any of the potential witnesses nor has it made a general statement regarding their anticipated testimony. For his part, plaintiff argues that witnesses who saw him use the report on his computer will be inconvenienced by having to travel from Long Island to New Jersey. (*See* Pl. Aff. ¶ 4.) However, given that defendant does not appear to dispute that plaintiff received the report, it is difficult to imagine this testimony being especially probative. Nor does plaintiff identify who these witnesses are or provide further specifics as to their testimony. Accordingly, although this factor appears to favor defendant, it is not entitled to substantial weight because of defendant's failure to provide the identity of the witnesses or a general summary of their anticipated testimony.

### (iii) Location of Documents

With respect to the location of documents, as noted above, defendant has submitted evidence that the relevant documents are located in Short Hills, New Jersey. Although this factor favors transfer, the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production. *See, e.g.*, *Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *DiStefano v. Carozzi N. Am., Inc.*, No. 98 Civ. 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight." (citations omitted)); *see also Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP), 2007 WL 1624757, at *3 (S.D.N.Y. June 4, 2007) ("While a nationwide class action invariably involves voluminous document discovery in numerous locales, the single most likely source of relevant documents is Defendant's headquarters in Massachusetts, because that is where Defendant's corporate policies are determined. This fact weighs in favor of transfer to the District of Massachusetts, albeit marginally."). Moreover, this factor is also not entitled to great weight because of the geographical proximity of Short Hills, New Jersey, to the Eastern District of New York.

### (iv) Convenience of the Parties

In terms of the convenience of the parties, the Court recognizes that "'[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave

plaintiff's choice of venue undisturbed." *See Wagner*, 502 F. Supp. 2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). However, where the parties have agreed upon a forum in a forum-selection clause, as the parties have done here, this factor generally weighs heavily in the adjudication of the case in the chosen forum. *See, e.g.*, *Falconwood Fin. Corp. v. Griffin*, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) ("In a case where the parties have already agreed to a particular forum, the 'convenience of parties' weighs heavily in favor of hearing the case in the designated court."); *Richardson Greenshields Secs., Inc. v. Metz*, 566 F. Supp. 131, 134 (S.D.N.Y. 1983) ("[T]he forum-selection clause is determinative as to the convenience of the parties."); *accord G. Angel Ltd.*, 2008 WL 351660, at *5. Moreover, in the instant case, plaintiff has failed to articulate any substantial inconvenience by having to litigate this case in New Jersey, as opposed to the Eastern District of New York.[4]

Therefore, in the instant case, the "convenience of the parties" factor weighs strongly in favor of transfer.

### (v) Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). However, courts have noted that the weight given to this factor is significantly diminished where none of the operative facts occurred in the forum chosen by plaintiff. *See, e.g.*, *Wagner*, 502 F. Supp. 2d at 317 ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum . . . ." (quotation marks and citation omitted)); *Royal Ins. Co. of Am.*, 998 F. Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however, where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines, Inc.*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not

---

[4] It seems likely that, if transferred, this case will be assigned to the Newark Courthouse and would, therefore, remain in the greater New York metropolitan area. Dun and Bradstreet's principal place of business is in Essex County, New Jersey, which is part of the Newark Courthouse's "vicinage." *See* Local Civil Rule 40.1(a), U.S. District Court for the District of New Jersey (explaining that, in considering which courthouse to assign a case to, the Clerk of the Court "shall consider the residence of the defendant, the convenience of litigants, counsel and witnesses, and the place where the cause of action arose"), *available at* http://www.njd.uscourts.gov/rules/completeRules-1-1-09.pdf (last visited Feb. 10, 2010); *see also* U.S. District Court for the District of New Jersey, FAQs, "Why Must I Serve In (Camden, Newark, or Trenton)?, http://www.njd.uscourts.gov/jury/juryFAQS.ht

ml#whymustiserve (last visited Feb. 10, 2010) (explaining that Essex County is in the Newark courthouse "vicinage"). Although this fact is in no way dispositive of the Court's resolution of the convenience factors (or of the motion as a whole), it supports the Court's view that plaintiff will not suffer any substantial inconvenience or hardship, financial or otherwise, from transfer of the case to New Jersey.

accorded the same 'great weight' and in fact is given reduced significance.").

Moreover, the plaintiff's choice of forum in filing the lawsuit is obviously not entitled to great weight or deference when the plaintiff has entered into a valid and enforceable forum selection clause because that clause reflects an earlier, contractually agreed upon choice of forum by the plaintiff. *See, e.g.*, *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, Civ. No. 3:09CV212(AWT), 2010 WL 174078, at *15 (D. Conn. Jan. 14, 2010) ("[A]s to the weight accorded the plaintiff's choice of forum, the court concludes that this factor weighs heavily against transfer because of the presence of a valid and enforceable forum selection clause, which the Supreme Court has described as a 'significant factor' that should figure centrally in the court's analysis." (quoting *Stewart*, 487 U.S. at 29)); *Ran-Mar, Inc.* v. *Wainwright Bank & Trust Co.*, No. 2:08-cv-159, 2008 WL 4559844, at *3 (D. Vt. Oct. 2, 2008) ("Ordinarily a valid contractual forum selection clause will overcome deference to a plaintiff's choice of forum, because it is 'treated as a manifestation of the parties' preferences as to a convenient forum.'" (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir.1995))); *Strategic Mktg. & Commc'ns, Inc. v. Kmart Corp.*, 41 F. Supp. 2d 268, 273 (S.D.N.Y. 1998) ("When a § 1404(a) motion involves a forum selection clause and the language of the clause is mandatory, rather than permissive, deference to the plaintiff's choice of forum is inappropriate."); *see also GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 408 (S.D.N.Y. 2001) ("[T]here is no reason for this court to decline to give weight to the expression of the contracting parties' preference that venue lie in Arkansas. There is no showing that Arkansas is any less convenient to plaintiff than New York is to defendant, and there is no evidence of bad

faith or fraud on the part of defendant such that litigation in the chosen venue would be unfair.").

As discussed in detail above, although plaintiff believes venue should remain in this district, an analysis of the other factors demonstrates that the balance is overwhelmingly in favor of transfer in this case because, among other things, the locus of operative facts is centered in New Jersey (and Pennsylvania), the relevant documents are in New Jersey, and the parties previously chose New Jersey as the forum through a valid and enforceable forum selection clause.

(vi) Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets").

In the instant case, the Court finds that the "relative means of the parties" factor is not especially significant. Other than conclusory allegations in his affidavit, plaintiff has not produced documentation that litigating the case in New Jersey—as compared to New York—would be prohibitively expensive. *Quan v. Computer Scis. Corp.*, Nos. CV 06-3927(CBA)(JO), CV 06-5100(CBA)(JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in

14

California, this factor adds nothing to my analysis."); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("'A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.'" (quoting *Federman Assocs. v. Paradigm Med. Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997))). Thus, although the relative means of an individual plaintiff in contrast to a large company clearly favors plaintiff, the Court does not view this factor as having significant weight in this particular case because plaintiff has been unable to demonstrate a substantial hardship (financial or otherwise) caused by the transfer.[5]

\* \* \*

---

[5] In terms of other factors, with respect to the forum's familiarity with governing law, the Court views this factor as neutral in this case because the Court assumes that both district courts are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's case under New Jersey law. *See Wagner*, 502 F. Supp. 2d at 317. Similarly, the Court does not view relative docket congestion as a factor in this case because this Court is fully capable of adjudicating plaintiff's claims in a timely manner. Also, with respect to the factor regarding availability of process to compel the attendance of unwilling witnesses, this factor is neutral because neither side has identified non-party witnesses for whom this would be an issue. Finally, the Court does not find any basis to conclude that "the interests of justice," which is a separate component of the § 1404(a) analysis, in any way militate against transfer but rather believes such interests support transfer under the totality of the circumstances for the reasons previously discussed.

In sum, after carefully considering the parties' submissions and the applicable law (and after conducting an evidentiary hearing), the Court concludes in its discretion that the defendant has met its burden and demonstrated that a balancing of the above-referenced factors (including the forum selection clause, the locus of operative facts, and the location of relevant documents), as well as the totality of the circumstances and the interests of justice, warrants transfer of this action to the District of New Jersey. Therefore, the Court grants defendant's motion to transfer the case.

III. CONCLUSION

For the foregoing reasons, defendant's motion to transfer the proceedings is granted. The Clerk of the Court is directed to transfer the case to the U.S. District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 17, 2010
Central Islip, NY

\* \* \*

The attorney for plaintiff is Eliot F. Bloom, 114 Old Country Road, Suite 308, Mineola, NY 11501. The attorneys for defendant are A. Ross Pearlman and Katherine Marguerite Lieb, Esqs., of Sills Cummis & Gross P.C., One Rockefeller Plaza, New York, NY 10020.