NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SCHERILLO,<br><br>       Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET, INC.,<br><br>       Defendant.<br><br>RICHARD A. RACIOPPI, JR.,<br><br>       Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET, INC.,<br><br>       Defendant. | Civ. Action No. 10-829 (KSH)<br>Consolidated Action<br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

      John Scherillo and Richard Racioppi, the plaintiffs in this action, together lost more than $1 million in a Ponzi scheme they believed was a legitimate company. Dun & Bradstreet ("D&B"), the defendant, provided each of them a risk assessment report that they claim negligently misrepresented that D&B had thoroughly investigated past fraud committed by the company's principals and negligently failed to reveal a fraud committed by the company's CEO. Now before the Court are D&B's two motions for summary judgment, one for Scherillo's claims and one for Racioppi's. [D.E. 52, 53.]

**I. Factual Background**

      Scherillo and Racioppi first heard of the purportedly legitimate company, Agape World, Inc. ("Agape"), from friends. (D&B Statement of Undisputed Material Facts as to Scherillo

1

("Scherillo Facts") ¶ 1; D&B Statement of Undisputed Material Facts as to Racioppi ("Racioppi Facts") ¶ 2.) These friends told Scherillo and Racioppi that Agape, a company that supposedly provided high interest bridge loans for large construction projects, could offer a rate of return of nearly 10 percent in two months. (Scherillo Facts ¶¶ 3–4; Racioppi Facts ¶¶ 4–5, 9.) An investor would invest his principal amount in a 60–90 day bridge loan, and after the loan period, the investor would either take out his investment, plus interest, or put the money back into a new loan. (Scherillo Facts ¶ 8.)

One of Scherillo's friends suggested that he "invest as much as he could." (*Id.* ¶ 11.) On July 7, 2008, Scherillo invested $50,000 in Agape; in exchange, he received a loan contract that expired in 60 days. (*Id.* ¶22, 29, 33.) At the end of the 60 days, he received a new loan contract that indicated he had earned an 8 percent return on the first loan and set out terms for a new loan. (*Id.* ¶¶ 41–43.) Before reinvesting, Scherillo decided to obtain more information about Agape and, on September 16, 2008, he bought a Plus Report from D&B. (*Id.* ¶ 55.)

Before making his initial investment, Racioppi met with and received assurances from Agape's leadership, including CEO Nicholas Cosmo and account executive John Human. (Racioppi Facts ¶¶ 7–10, 15–17.) In addition, he spoke to his brother-in-law, who suggested that he get more information, including a D&B Plus Report. (*Id.* ¶¶ 18–20.)

D&B provides its customers information that allows them to make decisions about credit risk; the Plus Report is targeted to small business users. (*Id.* ¶¶ 77–78.) D&B collects a range of information from numerous sources, and one category of information it obtains and includes in the Plus Report is criminal action associated with the management of the business. (*Id.* ¶ 98–99.) In the Plus Reports D&B compiled on Agape and provided to Scherillo and Racioppi, a checked box with the word "NO" appears next to the phrase "[e]vidence of bankruptcy, fraud, or criminal

2

proceedings in the history of this business or its management." (Agate Plus Report, attached to Opp'n Br. as Ex. A.)  In connection with their purchase of the Plus Reports, Scherillo and Racioppi were required to agree to D&B's terms and conditions, which they did, paying approximately $160 each for the reports.  (Scherillo Facts ¶56-57; Racioppi Facts ¶ 72.)

After receiving his Plus Report, Scherillo rolled over his initial investment, plus the interest it had purportedly earned, and invested another $25,000.  (Scherillo Facts ¶ 50.)  He never requested to withdraw his money.  (*Id.* ¶ 52.)  In January 2009, Scherillo discovered that Agape had stopped operating, and later on he learned that it was a Ponzi scheme.  (*Id.* ¶ 54.)

Racioppi made his initial $200,000 investment in Agape on June 13, 2007, and supposedly earned $27,975 in interest over the 70-day loan period.  (Racioppi Facts ¶¶ 34, 36.)  At the end of the loan period, Racioppi withdrew his money from Agape and deposited it in his bank account as a test to ensure that Agape was legitimate.  (*Id.* ¶¶ 38–41.)  He reinvested on September 11, 2007, and continued to roll over his investments and invest new money through December 2008.  (*Id.* ¶¶ 42–43.)  In total, Racioppi invested more than $1 million in 19 loan contracts.  (*Id.* ¶ 44.)  In December 2008, after Cosmo told Racioppi and other investors that contracts were being delayed, Racioppi asked for his investment back but was told the funds were frozen.  (*Id.* ¶¶ 66–67.)  Nevertheless, Racioppi later invested more money in Agape.  (*Id.* ¶ 69.)

**II. Procedural History**

On March 3, 2009, Scherillo filed a complaint against D&B in New York State Supreme Court in Nassau County.  [2:10-cv-00829, D.E. 1.]  On March 27, 2009, Racioppi filed a nearly identical complaint in the same court.  [2:10-cv-02484, D.E. 1]  The complaints each state only two counts: one for gross negligence and one for negligent misrepresentation.  Scherillo seeks

$75,000 in compensatory damages and $5 million in punitive damages, while Racioppi seeks more than $1 million in compensatory damages and $5 million in punitive damages. D&B removed both actions to the U.S. District Court for the Eastern District of New York, and Judge Bianco transferred them to this Court in accordance with the forum selection clause in D&B's terms and conditions. (Moving Br. at 3.) The cases were consolidated on May 18, 2010. [D.E. 31.] Following discovery, D&B filed these motions [D.E. 52, 53], seeking to dismiss each complaint in its entirety.

### III. Plaintiffs' Claims Are Barred

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (N.J. 2002). As Judge Barry noted, "[w]here a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the contract." *Int'l Minerals and Mining Corp. v. Citicorp N. Am.*, 736 F. Supp. 587, 597 (D.N.J. 1990). In *Saltiel*, the New Jersey Supreme Court recognized that New Jersey law places independent duties on the following actors: physicians, attorneys, insurance brokers, and manufacturers. *Saltiel*, 170 N.J. at 317. "However, the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort." *Park v. M & T Bank Corp.*, 2010 WL 1032649, at *7 (D.N.J. Mar. 16, 2010) (quoting *Shinn v. Champion Mortg. Co.*, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010). Thus, New Jersey's economic loss rule bars plaintiffs with contract claims from recovering in tort for economic losses in the absence of personal injury or property damage. *Saltiel*, 170 N.J. 297 at 311.

In the case at bar, both Racioppi and Scherillo had contracts with D&B, pursuant to which D&B was obligated to research and provide a report on Agape's health, stability, and risk.

The crux of their complaints is that D&B's research and report failed to disclose Cosmo's 1999 securities fraud conviction. Racioppi and Scherillo argue that this conduct amounts to negligence and negligent misrepresentation; however, if anything, it constitutes a failure to perform under the contract. In fact, both Racioppi and Scherillo recognize in their complaints and in their briefs that the only duty D&B assumed arose out of the contract. Both complaints assert that "Defendant had a duty of care to Plaintiff as a result of the existing contractual relationship between the parties," and that "Defendant had a duty to use reasonable care to impart correct information to Plaintiff due to a special relationship which exists between Plaintiff and Defendant by virtue of their contractual agreement for services provided by Defendant." (Racioppi Compl. ¶¶ 12, 19; Scherillo Compl. ¶¶ 13, 20.) In their opposition brief, plaintiffs assert that "Defendant contractually assumed the duty to fully and properly disclose" information about Cosmo's conviction. (Opp'n Br. at 8.)

At bottom, Racioppi and Scherillo assert that D&B failed to meet its contractual obligations. *See Saltiel*, 170 N.J. at 315–16 ("Irrespective of the terminology used in the complaint, however, we are persuaded that this case is essentially a basic breach of contract case, and that plaintiff, through her tort allegations, simply is seeking to enhance the benefit of the bargain she contracted for with defendant . . . ."). Therefore, they are limited to the relief available under contract law and cannot sue in tort. D&B is entitled to summary judgment, and both complaints are dismissed.

An appropriate order will be entered.

June 30, 2011

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

5